UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| MICHAEL A. STEINKER,       )<br>      Plaintiff,       )<br>       )<br>vs.       )<br>       )<br>ENOVAPREMIER, LLC,       )<br>      Defendant.       ) | 3:11-cv-010-RLY-WGH |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Michael A. Steinker ("Plaintiff"), is a former employee of defendant, EnovaPremier, LLC ("EP"), who was terminated from his employment when he was unable to return to work following his medical leave under the Family Medical Leave Act ("FMLA"). Plaintiff alleges that he was terminated in violation of the FMLA and the Americans With Disabilities Act ("ADA"). EP now moves for summary judgment. For the reasons set forth below, the Motion is **GRANTED**.

**I.      Factual Background**

EP assembles tires and wheels for the Toyota Plant in Princeton, Indiana. (Deposition of Michael Steinker ("Plaintiff Dep.") at 45-46). Plaintiff was employed as a production manager. (*Id*. at 45). Plaintiff's job duties included making sure the correct parts were available; overseeing the assembly of the product; revamping the safety manuals and leading the safety meetings; and occasionally filling in for an absent employee on the factory floor. (*Id*. at 45-46, 50-52). Plaintiff spent approximately 70

1

percent of his time in his office and 30 percent of his time on the factory floor. (*Id*. at 49).

In December 2005, Plaintiff was diagnosed with diverticulitis. (*Id*. at 56). Rather than have surgery, Plaintiff elected to have a drain inserted, developed an infection, and ended up back in the hospital. (*Id*.). One more hospital visit ensued. (*Id*. at 56-57). When all was said and done, Plaintiff was off work for approximately five months. (*Id*. at 57).

In October 2006, Plaintiff underwent a surgery related to his diverticulitis. (*Id*. at 58). Plaintiff had complications in surgery, and contracted an infection. (*Id*. at 58). Ultimately, he was absent from work from October 2006 through February 2007. (*Id*.). Because Plaintiff had not worked for EP for an entire year, he was not eligible for FMLA leave; therefore, EP granted Plaintiff medical leave for both absences. (*Id*. at 59-60). Plaintiff returned to work with a 30-pound lifting restriction. (*Id*. at 58).

On July 22, 2009, Plaintiff suffered a kidney stone while at work and went to the emergency room. (*Id*. at 70-71). Plaintiff was not admitted to the hospital, but he was taken off work. (*Id*. at 71). A few days later, Plaintiff consulted with a urologist who recommended surgery to remove the kidney stone. (*Id*. at 72).

Meanwhile, Plaintiff asked for and received FMLA paperwork from EP. (*Id*.). Because, at that time, EP employed less than fifty (50) employees due to layoffs, Plaintiff was not eligible to receive FMLA. (*Id*. at 73). EP therefore granted Plaintiff a medical leave of absence beginning on July 23, 2009. (*Id*.).

On August 3, 2009, Plaintiff underwent surgery for his kidney stones. (*Id*. at 74). Following the surgery, Plaintiff experienced abdominal problems related to a previous hernia. (*Id*. at 84). On August 27, 2009, Plaintiff's family physician, Dr. Jani, referred Plaintiff to Dr. Thomas for pain management. (Defendant's Ex. C). Dr. Jani provided Plaintiff with a note stating, "[p]atient is off work until seen by Dr. Thomas for pain management for evaluation. Patient has appointment on 9-9-09 at 1:45. Return to work date will be determined by Dr. Thomas." (Defendant's Ex. B). On September 16, 2009, Dr. Thomas released Plaintiff to "return to work with restrictions of 10 pound limit until his next office visit of 10/7/09." (Defendant's Ex. D).

During this general time frame, Plaintiff began having mental health problems. (Plaintiff Dep. at 88). As a result, on September 17, 2009, Plaintiff provided EP with a note from Dr. Jani stating, "[o]ff work until patient seen by psychiatrist. Psychiatrist will continue care needed. Any work excuses after seen by psychiatrist will come from that office." (Defendant's Ex. E).

Plaintiff then began treating with Dr. Hungerford, a psychiatrist, for anxiety and depression. (Plaintiff Dep. at 77, 101, 125). Because EP issued a recall of employees from layoff, EP contacted Plaintiff about applying for FMLA. (*Id*. at 76-77). Dr. Hungerford filled out Plaintiff's FMLA paperwork, and provided Plaintiff with an off-work slip that states, "Mr. Steinker is unable to return to work due to illness and will be incapacitated fully until 2 January 2010 or later." (*Id*. at 78-79; Defendant's Ex. F).

On September 28, 2009, EP's Director of Human Resources, Cate Darmstadt

3

("Darmstadt"), informed Plaintiff via email that because the Princeton Plant employed more than fifty (50) employees, Plaintiff needed to fill out the attached FMLA paperwork with his doctor and return it to her by October 12, 2009. (Plaintiff's Ex. D). Plaintiff did so, and on November 30, 2009, EP granted Plaintiff twelve (12) weeks of FMLA leave, and informed him that he had to return to work by December 14, 2009, without restrictions, or lose his job. (Plaintiff Dep. at 126-27; *see also* Affidavit of Michael Steinker ¶ 8; Plaintiff's Ex. D). Plaintiff asked Darmstadt if he could extend his leave by going on medical leave, but that request was denied. (Plaintiff Dep. at 102; Plaintiff's Exs. C, D). Darmstadt informed Plaintiff that "[a]lternate medical leave is not an option for FMLA eligible sites, [sic] Princeton is FMLA eligible." (Plaintiff's Ex. D; *see also* Plaintiff's Ex. A at 23 (EP's policy handbook stating that an employee is eligible for FMLA if, *inter alia*, the employee works at a location "where at least 50 employees are employed by the employer within 75 miles").

On December 9, 2009, Plaintiff informed Darmstadt that his appointment with Dr. Hungerford had been cancelled, and that he was trying to get another appointment. (Plaintiff's Ex. D). He also attached a note from his pain management doctor, Dr. Thomas, stating that his condition had improved with physical therapy and that Plaintiff wished to return to work. (Plaintiff's Ex. G). Dr. Thomas stated, "[h]owever, at this point he is unable to return to work, based on the condition that he cannot have restrictions." (*Id.*). Plaintiff did not receive a release to return to work without any restrictions by December 14, 2009. (Plaintiff Dep. at 99, 101, 143). Accordingly, EP

terminated his employment. (*Id*. at 102; Plaintiff's Ex. D).

While on leave, Plaintiff received both short and long term disability payments. (Plaintiff Dep. at 111). In late 2010, Plaintiff was approved for full Social Security Disability Insurance ("SSDI") benefits back dated to January of 2010. (*Id*. at 110-11). Plaintiff is currently not employed and continues to receive full SSDI benefits. (*Id*. at 112). Plaintiff has made no effort to look for work or return to the work force. (*Id*. at 120).

## II. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). The non-moving party, however, may not rest on mere allegations or denials in its pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. Stated differently, only disputes over material facts – i.e., "facts that might affect the outcome of the suit under the governing law" – will preclude the entry of summary judgment. *Id*. at 248. When determining whether a genuine issue of material fact exists, the court views the record and all reasonable inferences in the light most favorable to the

nonmoving party. *Id.* at 255.

## III. Discussion

Plaintiff alleges that EP violated the ADA when it terminated him and failed to provide him with a reasonable accommodation.

### A. ADA Discrimination

Title I of the ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Title I also provides that an employer discriminates against a qualified individual with a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). Thus, a plaintiff is entitled to ADA protection only if he establishes that he is a qualified individual with a disability who is able to perform the essential functions of the relevant employment position. *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 748 (7th Cir. 2011). The determination of whether an individual is a "qualified individual with a disability" is made as of the time of the employment decision. *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 862 (7th Cir. 2005).

EP raises two dispositive arguments relating to whether Plaintiff is a qualified individual with a disability. The first is whether Plaintiff meets that definition – i.e., whether he could have performed his job as a production manager, as of the date of his

termination, with or without a reasonable accommodation.  The second is whether Plaintiff is estopped from arguing he is a qualified individual due to statements he made in his sworn statement to the SSA.  The third issue raised by Plaintiff is whether EP committed a per se violation of the ADA by requiring that he could only return to his job at EP "without restrictions."  The outcome of that inquiry hinges on whether Plaintiff is a qualified individual.  The court now turns to that threshold issue.

### 1. Qualified Individual

As an initial matter, Plaintiff claims he suffers from two disabilities: (1) pain management as a result of his kidney stone surgery and related complications and (2) "mental health issues/depression."  (Plaintiff's Response at 7).  EP does not contest Plaintiff's assessment of his impairments.  Instead, EP contends that Plaintiff was not a qualified individual under the ADA because he could not perform the essential functions of his employment position with or without a reasonable accommodation.  In support of that proposition, EP cites to Dr. Hungerford's note stating that Plaintiff was totally incapacitated until January 2, 2010, or later.  Plaintiff responds that there is no evidence to support EP's assertion, and that the evidence of record reflects that he was terminated because he could not return to work without any restrictions – i.e., with a lifting restriction. In support of Plaintiff's position, he cites to the email exchange between him and Darmstadt that is in evidence as Defendants' Ex. G and Plaintiffs' Ex. D.  The emails dated December 9 and December 10, 2009, respectively, read in relevant part:

> Hi Cate

> I have attached a note from Dr. Thomas, [sic] please review it and let me know if I will be able to return to work.  My appointment with Dr. Hungerford was cancel [sic] due to her being sick. I am trying to get a new appointment.  Please let me know.
>
> Hello Mike,
> Based on your doctor's note [sic] you have not been released to work without restrictions.  There is no other leave of absence for you to apply for.

Plaintiff and Darmstadt continued to communicate by email.  On December 13, 2009, Plaintiff wrote:

> Hi Cate
> I have attached my request for medical leave of absence and a copy of my Doctors [sic] note from Doc [sic] Thomas stating I could come back to work but would be on a 10lb weight limit, which according to our communications I would not be allowed back to work.  I have also attached a Doctors [sic] note from Dr. Jani.  If you have any question or need additional information please let me know.  Please respond with a copy of this leave being approved or denied.

(*Id.*).  On December 15, 2009, Darmstadt notified Plaintiff by email that he was terminated.  (*Id.*).

One could reasonably interpret this email exchange as Darmstadt informing Plaintiff that he could not return to work because Dr. Thomas had not "lifted" Plaintiff's lifting restriction.  But that fact alone does not establish that Plaintiff was otherwise able to perform his job as a production manager with or without a reasonable accommodation.  It is undisputed that Plaintiff also suffered from a mental disability, and that Dr. Hungerford, Plaintiff's psychiatrist, wrote a note to EP stating that Plaintiff was "totally incapacitated" until at least January 2, 2010 – well after the December 14, 2009 return-to-work date.  Plaintiff's admonitions that he could have obtained a release to return to work

8

from Dr. Hungerford, but did not because he knew it would be "futile," (*see* Plaintiff Aff. ¶¶ 6-8), and his testimony that he tried to get in contact with Dr. Hungerford, but was unsuccessful (*see* Plaintiff Dep. at 143), are insufficient to meet his burden of proof. Because Plaintiff was not a qualified individual with a disability as of December 14, 2009, he is not entitled to the ADA's anti-discrimination provisions.

### 2.     Judicial Estoppel

"The doctrine of judicial estoppel prevents a party from adopting a position in a legal proceeding contrary to a position successfully argued earlier by that party in a legal proceeding." *Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 790 (7th Cir. 1999). EP argues that Plaintiff is judicially estopped from asserting that he is a qualified individual with a disability because the Social Security Administration ("SSA") made a determination that Plaintiff is in fact disabled. EP's argument invokes the interplay between the ADA and the SSA.

The ADA protects the employment rights of disabled people who can work, while the Social Security Act ("SSA") provides income to disabled people who are unable to work. *Devine v. Bd. of Comm'rs of Elkart Co.,* 49 Fed. Appx. 57, 60 (7th Cir. 2002) (citing *Lee v. City of Salem*, 259 F.3d 667, 672 (7th Cir. 2001)). An ADA plaintiff must show that he is "a qualified individual with a disability," that is, one who is capable of performing the essential functions of the job with or without an accommodation. 42 U.S.C. § 1111(8). On the other hand, a claimant for disability benefits under the SSA must show that he is unable to perform his previous work or any other type of substantial

9

gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2)(A).  Because of the statutes' conflicting standards, a claim for SSDI benefits would appear to preclude an ADA claim.  *Devine*, 49 Fed. Appx. at 60 (citing *Lee*, 259 F.3d at 673).

In *Cleveland v. Policy Management Systems Corporation*, the Supreme Court recognized that the apparent conflict is not inherently absolute, and may be reconciled in certain cases.  526 U.S. 795, 802-05 (1999).  Due, in part, to the fact that when the SSA determines whether an individual is disabled, it does not take the possibility of reasonable accommodation into account, "an individual might qualify for SSDI under the SSA's administrative rules and yet, due to special individual circumstances, remain capable of 'perform[ing] the essential functions' of her job."  *Id.* at 803-04.  For this and other reasons set forth in the *Cleveland* opinion, a plaintiff may apply for SSDI and still be considered a "qualified individual" under the ADA.  *Id*. at 804.

Certain statements made in an application for SSDI may, however, necessarily conflict with a claim under the ADA.  *Id*. at 806.  For example, a claimant's sworn statement in an application for disability benefits that he is "totally disabled" and/or "unable to work" would appear to negate an essential element of the claimant's ADA case – that he is a qualified individual with a disability.  *Id*. at 806.  To avoid summary judgment, the ADA plaintiff must resolve this apparent inconsistency with a sufficient explanation.  *Id.*  "[T]hat explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of h[is] job,

with or without 'reasonable accommodation.'" *Id*. at 807.

In the present case, Plaintiff testified that he received SSDI benefits, but he did not offer, nor was he asked, the nature of the disability upon which the application for SSDI was based. (*See* Plaintiff Dep. at 110-12). Plaintiff's Application Summary for Disability Insurance Benefits[1]" does not clear up that matter, but it does contain two material statements: "I became unable to work because of my disabling condition on July 22, 2009" and "I am still disabled." (*See* Docket # 44).

Plaintiff's application was filed on November 9, 2010 (*id.*); thus, at least as of that date, he believed himself to be "disabled." Plaintiff's explanation for the apparent inconsistency between his statement in his application for SSDI – that he was disabled as of July 22, 2009 – and his assertion here that he was able to work with a reasonable accommodation as of December 14, 2009, is found in his affidavit:

> I could perform jobs if provided reasonable accommodation [sic] including but not limited to medical leave, breaks at work where he [sic] could sit down, the use of ramps or elevators to avoid climbing up stairs and others.

(Plaintiff Aff. ¶ 12).

Plaintiff's statement that he "could perform jobs" if given these accommodations (to the extent they are reasonable and appropriate given his job duties), does not

---

[1] EP represents that it asked for, but did not receive before the date of filing the present motion, Plaintiff's application for SSDI benefits. (EP's Moving Brief at 12, n.2). The court, therefore, ordered Plaintiff to file it. (Docket # 43). Rather than file the full application, Plaintiff filed an "Application Summary for Disability Insurance Benefits." (*See* Docket # 44). This form does not state the nature of his apparent disability. Given his physical and mental health issues, the court can only assume that his application was based on one of the two alleged bases for disability asserted in this case.

sufficiently establish that he could perform his specific job as a production manager at EP as of December 14, 2009, given his physical and mental limitations. Moreover, Plaintiff's statement that he "could perform jobs" is belied by his own deposition testimony, taken some six months before he filed his affidavit, wherein he testified that he has not worked or tried to find work since December 2009. (Plaintiff Dep. at 124). Although Plaintiff received a "work ticket" from the SSA in March 2011, he has not followed up on that with the SSA due to "health issues," including "a knee that went bad" which required extensive therapy, and a stent replacement in one of his coronary arteries. (*Id*. at 112-13, 119).

In addition, Plaintiff continues to see Dr. Jani, Dr. Hungerford, and Dr. Jordan, his cardiologist, on a fairly regular basis. (*Id*. at 119) (testifying that he sees Dr. Jani and Dr. Hungerford every four to six months, and Dr. Jordan at least once a year). Physically, Plaintiff does not do "a lot of things," such as mow the lawn, but he "tries to do some laundry and things like that." (*Id*. at 125). As for his emotional stability, Plaintiff believes his condition has improved since December 2009. (*Id*.). He does not "seem to have the anxiety [he] had before, the nervousness, you know." (*Id*.).

Plaintiff has not offered a sufficient explanation warranting a reasonable juror to conclude that, assuming the truth of Plaintiff's statement in his application for SSDI that he is disabled and unable to work, Plaintiff is nonetheless able to perform the essential functions of his job with a reasonable accommodation. Plaintiff's ADA claim is therefore barred by judicial estoppel.

### 3. Per Se Violation

The ADA requires employers to individually assess the individual and the relevant position in determining whether the employee can perform his or her position with or without an accommodation. *Steffen v. Donahoe*, 680 F.3d 738, 748 (7th Cir. 2012). A policy that requires an employee to be 100% healed before returning to work necessarily operates to exclude disabled people who are qualified to work, and constitutes a per se violation. *Id*. Plaintiff argues that EP committed a per se violation when Darmstadt informed Plaintiff that he had to return to work by December 14, 2009, *without restrictions*, or be terminated.

One can only advance this theory of liability if one is a qualified individual with a disability. *Id.*; *Powers v. USF Holland, Inc.*, 667 F.3d 815, 819 (7th Cir. 2011). For the reasons just set forth, Plaintiff is not. Accordingly, EP cannot be found liable under that theory.

### B. FMLA

Plaintiff brings two claims under the FMLA: retaliation and interference. The court will begin its discussion with Plaintiff's retaliation claim.

### 1. Retaliation

Under the FMLA, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). Plaintiff proceeds under the direct method of proof, which requires an FMLA plaintiff to show that: (1) he engaged in statutorily protected

13

activity; (2) the employer subjected the plaintiff to an adverse employment action; and (3) the two events had a causal connection. *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 825 (7th Cir. 2011). The first two elements are not in dispute. As for the third, Plaintiff claims he has successfully established a causal connection between the exercise of his FMLA rights and his termination based solely on the fact that he was terminated as of the day his leave ended – December 14, 2009.

Suspicious timing alone is rarely sufficient to establish a triable issue. *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) ("Speculation based on suspicious timing alone, however, does not support a reasonable inference of retaliation; instead, plaintiffs must produce facts which somehow tie the adverse decisions to the plaintiffs' protected actions."). The facts of the present case reflect that is not one of those rare cases.

In July 2009, prior to EP's recall of employees from a layoff, Plaintiff applied for FMLA leave. Because the Princeton facility employed less than fifty employees at that time, Plaintiff instead received a medical leave of absence. Once the recall was made, and EP's Princeton location exceeded the fifty-employee limit, EP contacted Plaintiff about applying for FMLA leave. In November 2009, that request was approved, with a start date of September 21, 2009, and an end date of December 14, 2009. As such, Plaintiff received a full twelve (12) weeks of FMLA. Further, Plaintiff received medical leave from July 23, 2009, through September 21, 2009, and FMLA leave from September 21, 2009, through December 14, 2009 – nearly five months of leave. In short, this case

presents no evidence from which a reasonable juror could infer that EP unlawfully retaliated against Plaintiff for taking FMLA leave.

### 2. Interference

Under the FMLA, a plaintiff has the right to be restored to the same or an equivalent position that he had before he took qualifying leave. *Id.* § 2614(a)(1). Thus, it is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA rights. 29 U.S.C. § 2615(a)(1). To establish an interference claim, a plaintiff must show that: (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to take leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled. *Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010).

An employee's right to be restored to his former position is not absolute. *Id.* An employer maintains the right to refuse to restore an employee if, for example, "restoration would confer a 'right, benefit, or position of employment' that the employee would not have been entitled to if the employee had never left the workplace." *See Kohls v. Beverly Enter. Wis., Inc.*, 259 F.3d 799, 805 (7th Cir. 2001) (citing 29 U.S.C. § 2614(a)(3)(B)). The court's analysis, therefore, turns on why the employee was not reinstated. *Id.* For example, an employee may be terminated for poor performance if he would have been terminated for poor performance even absent his leave. *Id.*

Plaintiff argues only that he was "ready to return to work at the end of the FMLA

period but was not reinstated." (Plaintiff's Response at 17). For the reasons previously stated, Plaintiff was not "ready to return to work" on December 14, 2009, and thus, his interference claim fails.

## IV.     Conclusion

Plaintiff's evidence in support of his ADA and FMLA claims is insufficient to defeat EP's motion for summary judgment. Accordingly, EP's motion (Docket # 27) must be **GRANTED**.


**SO ORDERED** this   20th   day of August 2012.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Kevin M. Halter
Rhine Ernest LLP
khalter@rhine-ernest.com

Robert M. Kelso
KIGHTLINGER & GRAY
rkelso@k-glaw.com

Laurie Goetz Kemp
KIGHTLINGER & GRAY, LLP-New Albany
lkemp@k-glaw.com

Chad J. Sullivan
JACKSON KELLY PLLC
cjsullivan@jacksonkelly.com